May it please the Court, my name is Michelle Callan and I represent the appellant, Mr. Anthony Clarke. Your Honors, I would like to reserve three minutes for rebuttal. Just watch the clock. Thank you, Counsel. Thank you. Mr. Clarke asked this Court to reverse summary judgment in favor of the defendant, Ms. Gilda Brown, for two reasons. First, genuine issues of material fact exist in the record as it appeared before the District Court. And second, the District Court erroneously granted summary judgment on the basis of a deficient record. Specifically, the Court permitted Ms. Brown to introduce portions of Mr. Clarke's deposition taken out of context in violation of local rules. Regarding the first basis for reversal, deliberate indifference, Mr. Clarke established both elements of a deliberate indifference claim. First, a serious medical need, and second, deliberate indifference to that serious medical need. The problem I have with your case is I'm having a difficult time finding sufficient evidence of deliberate indifference. As you well know, he had an appointment. See, this is not a doctor case, it's a scheduling case with a person who schedules appointments. The appointment that he showed up for on July 28th he didn't get, but then he saw a specialist just 11 days later on August 8th. Just 11 days later. And then he saw another specialist right after that on September 2nd. So I've just failed to see how there's deliberate indifference by this delay in scheduling. It was just a few days. That's correct, Your Honor, that Mr. Clarke saw a specialist. Where is the evidence of deliberate indifference on the part of this scheduler sufficient to sustain a verdict in favor of your client? There were two instances of deliberate indifference on July 28th at the time that Mr. Clarke was supposed to be seen by a prison physician. He was instructed by his treating physician, his surgeon, to seek care at the prison clinic should he experience increased pain. Indeed, he experienced that pain and showed up to the prison clinic to receive care for that increased pain. At the time that he showed up at the clinic, the defendant, Ms. Brown, knew of his serious condition, and the doctor's orders were in his chart to seek additional care. And nevertheless, she turned him away from the clinic. How is that? You've read the cases. You understand the high standards. This has to be deliberate indifference. And that's just – it seems to me that's nothing more than negligence or, to use the street term, a mess-up in scheduling. I don't find any deliberate indifference on the part of this scheduler. Now, you point back to some grievance that he filed months before, and you say, well, it must be in retaliation. But that seems to me to be nothing more than speculation. What am I missing? Well, two responses to that, Your Honor. In a case in which, Your Honor, Judge Clifton was a panel member, this court held that assertions that mere negligence rather than deliberate indifference, such assertions only highlight that there is a dispute of fact. It does not resolve the question in favor of the defendant. Well, you see, that's a sort of a black-letter thing that Justice Sotomayor would turn down. You ought to read her book. She says you go to the facts, the facts, the facts. And the facts in this case haven't convinced me that there's anything that shows deliberate indifference, again, sufficient to sustain a verdict in your client's favor. But more than that, there's no showing of any damage. I mean, the specialist on September 2nd didn't give him any pain medication, and according to his own testimony, he was in continuous pain from the surgery in March of 2003 until just recently. So I don't see any evidence of any damage that's done by this. What am I missing there? Well, there is evidence in the record that Neurontin did alleviate Mr. Clark's pain. The specialist didn't give him any on September 2nd either. Nothing happened. Correct. But it's a question of fact whether the physician on staff at the clinic at the time that he arrived at the clinic would have given him that medication. It was a medication that did alleviate his pain. Now, your own articulation of the issue is nothing more than speculation. It's a question of whether somebody would have given him. Now you're asking us to somehow to assume that there's enough facts to show that had he shown up for the appointment, he would have been given medication by some doctor we don't even know about. Well, the possibility that the… Possibilities aren't… You have to have a genuine issue of material fact. How is that genuine? I mean, how do we know that some doctor unidentified would have given him a pain medication on the day of the appointment that was unscheduled? Well, those are the sorts of questions that who the doctor was and what the doctor would have or could have given are the sorts of questions of fact. Is there any allegation that the defendant controlled what doctor would have been saying and that she was steering him to a particular doctor who wouldn't prescribe the right medication? No, there's no evidence. So how is it the technician's fault that he went to see a doctor that didn't prescribe what turned out to be the right medicine? Well, there is evidence in the record as to her retaliatory motives. Well, that's motive, but we've got a causation problem here. I mean, Judge Strotz observed that your client himself has testified that he didn't get relief until he received that other medication or rotin or something like that, and that wasn't until 2009. So six years later, finally some doctor gives him something that works, but how is any of that to do with the technician? I mean, the suit is against the technician, not against the doctor that didn't give the right prescription. And the technician is unlikely to have known anything about the different prescriptions, let alone that a given doctor would prescribe this medicine instead of that medicine. So the problem really wasn't the 11-day delay. The problem wasn't giving the right medication, and that's not something I can see that the medical technician has anything to do with. Well, the medical technician, Your Honor, controls whether or not he's going to be seen by the doctor. She also controls whether or not his health care. He was seen by the doctor, and it didn't get any better. The problem is something that turns out to be something different, that the doctor who saw him 11 days later, and presumably all the doctors who saw him the succeeding six years, 2003 to 2009, didn't prescribe a medication that proved effective. So how is that the technician's fault? The fact that he continued to suffer pain past the 11-day mark when he was seen by a physician, that is a question regarding the potential indifference of the doctors. However, the time frame that passed from July 28th until he received medical care. The indifference of the doctors. I think we need to focus on the indifference of this particular scheduler, don't we? Correct, and that is my point, Your Honor, that she was deliberately indifferent on July 28th, 2003, on two separate occasions, and as a result of that, Mr. Clark suffered from untreated pain. Well, he didn't, though. His claim isn't that he suffered because of an 11-day delay. His claim really is that he suffered because he wasn't given the right prescription. His claim is that he faced harm, that he suffered for the period of time after he came to be seen at the clinic, and this Court has found harm where the defendants caused prisoners pain even for a mere four hours, and that was sufficient. So you're down to about two minutes. You indicated you wanted to reserve. I would like to reserve. You may do so. Thank you, Your Honor. We'll hear from the State. May it please the Court. Janine Jeffrey on behalf of Gilda Brown. I think despite counsel's argument, the Court seems by the questions has seen it. I'll never assume that we think anything. Okay. Fair enough. The crux of this case is an 11-day delay, I think. It's clear. He didn't see a prison doctor on July 28th, but he saw a specialist August 8th and September 2nd, and as the Court recognizes, they didn't give him any medication that helped him. So he's talking about 11 days of delay. And the biggest problem, keep hearing this phrase, oh, she was deliberately indifferent over and over and over, but the facts before the district court were clear, and the facts were that when he arrived at the clinic, she found that she had ducated him in error. The plaintiff put on no contrary evidence. Well, that's her defense. Agreed. I mean, the other side points to the fact that he'd been a pain in the rear, and one could infer from that that this was done in retaliation for his grievances that he'd been filing. Well, but it was plaintiff's obligation, I think. First of all, this is a deliberate indifference case, not a retaliation case. But plaintiff's obligation. That's right, but, I mean, I understand that. But the idea is that the retaliation provides the motive for deliberate indifference. But I think the crux of that argument is that the plaintiff conceded in his deposition that he didn't know why he was turned away, and he conceded, he said, I have no evidence to refute her claims that I was turned away for legitimate reasons. And he was so informed of that during the grievance procedure, is that right? That it was an overbooking problem? I believe that's the case. But I guess what I was trying to focus on a little bit was the report and recommendation issued by the magistrate who said these are the undisputed facts. So those were what the magistrate found, given the evidence. Your point is he's not disputing that fact. He never disputed that fact. In his deposition, he never challenged the magistrate's report and recommendation on that fact. He didn't challenge that at all. So I think that he can't come up here and say, well, wait a minute, there's a different fact, meaning, okay, now we have evidence that she was retaliating against him. So I think the report and recommendation and the findings in there are important to consider, as that was what was before the court at the time. And I think that the factual findings made, factual findings is perhaps not the right word. That's right. There's no findings in a motion for summary judgment. But there is a finding that there is no genuine issue as to a fact. So I think while we're loosely, I think while the courts usually loosely use the term factual findings, I think what they're really saying is that there's no genuine issue of disputed fact. And that they are entitled to do. And that, I think, is their job on a summary judgment. You assume the facts and the like most favorable, in this case, to the appellant. And you ask on the basis of those facts, would they sustain a verdict in favor of the appellant? Yes. And I think the answer to that has to be no. And that's something we reviewed in OVO. It's not like a factual finding where it's a clear air standard. Right. I'm sorry. Well, the summary judgment. You can characterize and the term finding gets used sometimes in the summary judgment context. You're correct. But as you re-articulated it, that is, a determination there's no genuine issue of material fact, that's something we don't review like a factual finding, which ordinarily is subject to clear air review. The standard review on a summary judgment is de novo. We decide for ourselves based on the record whether there's a genuine issue of material fact. Yes. I guess my – I guess what I would say to that, however, is that because he didn't object to the report and recommendation that the findings of fact – again, I used the term wrongly, and I'm sorry – the findings of those – The statement of undisputed fact. Yes. That the statement of undisputed fact cannot then be challenged on appeal. I don't think the Court can re-look at that. And I think that was one of the issues that is addressed in the papers. And I think that once you take the facts, the undisputed facts that the Court found for which he found no contrary evidence, there cannot be a finding of deliberate indifference in this case. The other issue, of course, is whether the magistrate judge committed an error of law in denying Clark access to his deposition and whether the district court erroneously relied on excerpts taken out of context from that deposition. What's your response to that? I have several responses to that. But one of which is I don't think – what happened in the lower court was that Mr. Clark filed a motion asking the Court to order the defendants to give him a free copy. I think there is no law that justifies that. Court reporters are to be paid for copies of transcripts. The defense shouldn't have to pay for a copy of a transcript to send to the plaintiff. I think the appellants understand that – and, Your Honor, I can cite you to the portion of the record where he asks the defense to order a free copy, which is, I think, ER-166. What the plaintiffs now claim is – or the appellants now claim is that they want access. Well, access is different because, as I understand that, you're supposed to lodge it with the court. It was not lodged with the court. But it's not filed. It doesn't become a public record, a deposition like that. So when you're dealing with an inmate, I don't know how that would work itself out. I don't know how he would get access to the transcript, which would be technically with the clerk. I would also say that that whole argument is a huge red herring. They have made ad hominem attacks about information that was left out of the record. But the simple fact is they've never said what they think was left out of the record. And not only that, but Mr. Clark put in a declaration. That's all he has to do. He doesn't need his transcript. All he has to do is write, here's what happened to me and here's all my reasons. He doesn't need to rely on the deposition transcript. And I guess the third point I would make on that issue is as an advocate, it's not my obligation to put in evidence that's helpful to the plaintiff. I don't believe I left out any evidence that was helpful to the plaintiff, but it's certainly not my job. And I would submit that before the court would ever consider reversing a summary judgment, there has to be evidence that whatever was in that transcript would have changed the outcome of this case. And I think there is no evidence at all with respect to that. Anything further, Counsel? No, Your Honor. Thank you. Thank you. Ms. Callan, you have some reserved time. Thank you, Your Honors. What's the showing of what was in the deposition that he was trying to get at and was denied? I mean, you make the general claim he was denied something, but where is there anything in the record showing what it is that he was denied that would have any prejudice to him in this case? Well, unfortunately, because Ms. Brown strategically chose to withhold those portions of the deposition, they're not in the record below. Does he say anywhere in a declaration, as the other side points out, I distinctly remember saying or else this was said and it's cut out? I mean, he's got to point to something. You just can't generally say, well, I didn't get the whole thing. What's the damage? What's the prejudice? Well, the prejudice is that Mr. Clark wasn't allowed to put the statements into context. What statements? For example, there are some glaring statements taken out of context. The deposition, for example, skips from page 73 to page 75. That doesn't necessarily mean they're taken out of context. We get that all the time in our excerpt of records. There isn't an excerpt we get that doesn't have big holes in it. Correct. Unfortunately, it's directly after the question of what medication alleviates your pain. But and? And so the page discussing what medication alleviates his pain has been completely withheld from the record. And what's missing? Does he say what's missing? He was there. Well, unfortunately, Brown seeks to hold Clark to the same standards as parties who are represented. Yeah, but does he say what's missing? Your answer is no. No. Okay. But Mr. Clark's position is that the defendant cannot strategically introduce only portions of the deposition she deems favorable. Did Mr. Clark apply to the district court for a copy of the deposition? He brought a motion to access his deposition, and that was denied. So that's the question before us now. Why should that motion have been granted by the district court? Why was it an abuse of the court's discretion to deny it? I see that my time is running out. May I answer your question? Certainly. The court committed an error of law at the time where it assessed the motion to access. The court erroneously stated its hands were tied and that no rules facilitated Mr. Clark's access to his deposition. However, two provisions in the federal rules and a provision in the local rules did facilitate Mr. Clark's access, and denial of the motion to access was not based on some sort of exercise of discretion. It was based on an error of law as to the extent of the court's authority, and the Supreme Court has held that a district court, by definition, abuses its discretion when it makes an error of law, and that was the abuse of discretion. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. Thank you, Your Honor. You are appointed pro bono, is that right? Yes, Your Honor. We very much appreciate your service. Thank you very much. Thank you.
judges: O'scannlain, Trott, Clifton